George TAGGART, III, Appellant,

v.

Thomas W. CREWS, Appellee.

No. 15393.

Court of Civil Appeals of Texas, San Antonio.

March 26, 1975.

Perkins, Davis, Oden & Warburton, Kenneth Oden, J. G. Adami, Jr., Alice, for appellant.

Grose, Nixon & Erck, Alice, for appellee.

KLINGEMAN, Justice.

This is a summary judgment proceeding. Appellant, George Taggart, III, sued appellee, Thomas W. Crews, for specific performance of a contract of sale of a tract of 1,965 acres of land in Duval County, Texas, owned by Crews; and in the alternative, for damages for the breach of such contract. A petition in intervention was filed by Compton and Compton, the real

estate brokers involved, seeking commissions from Crews. This portion of the case was severed. The trial court granted appellee's motion for summary judgment and decree that Taggart take nothing against Crews. Taggart filed no motion for summary judgment and on this appeal seeks only a reversal and remand.

Appellant asserts three points of error: (1) the trial court erred in holding that as a matter of law the offer in writing was but a real estate listing contract; (2) the trial court erred in holding that the offer in writing and the acceptance of such offer did not satisfy the requirements of the Statute of Frauds; (3) the trial court erred in granting appellee's motion for summary judgment against appellant and in rendering a take nothing judgment against appellant without a conventional trial on the merits.

The summary judgment evidence consists of depositions of Thomas W. Crews, George Taggart, III, M. A. Compton, Jr., an affidavit of Robert B. Wallace, an attorney at law and tax consultant, and various exhibits.

The background of this case is somewhat complicated and involved. Appellant contacted Mr. Miles A. Compton, Jr., a licensed real estate broker, and told Compton that he was looking for a place to buy land in brush country. Thereafter, Compton contacted Crews, who evidenced some interest in sale of his ranch; and, generally, the terms were discussed. Compton advised Crews that he would draw up a letter agreement covering what they had discussed; that he had two or three prospects, but that he had promised one of the prospects the first look at the property. Crews then told Compton to bring his prospect over. On April 30, 1973, Compton brought Taggart to Alice, Texas, where Crews lived and, at such time, took a letter agreement to the residence of Crews and left such letter agreement with him. This letter agreement was never signed.[1] Compton then took Taggart to the ranch, and Crews and Compton discussed with Taggart the terms of the trade and some discussion was had as to when Crews would be able to move his cattle from the property. Before leaving the ranch, Taggart told Crews that he would buy the ranch, but that he wanted to show it to his partners. Crews, at such time, told Compton he wanted to see him, and after Taggart left, Compton went to see Crews, who said that there was some misunderstanding about the letter agreement drawn up by Compton; that Crews thought that Compton's commission was going to be added to the purchase price, and this letter agreement was never signed. Thereafter, after some negotiations between Compton and Crews it was agreed that: (1) if Taggart bought the property, at $135.00 per acre, the commission would be three percent; or (2) if someone else bought the property at $145.00 per acre, Compton's commission would be six percent. Thereafter two documents were prepared by Compton; both of which were

[1]    "April 27, 1973
Mr. Tom Crews
1328 Lincoln Drive
Alice, TX. 78332
Dear Mr. Crews:
This letter will confirm our agreement on a sixty (60) day listing for Compton and Compton Company, to sell one thousand nine hundred sixty five (1,965) acres, more or less, in Duval County, owned by you.
The sale price agreed on is One Hundred Thirty Five Dollars ($135.00) per acre, or a total price of Two Hundred Sixty Five Thousand, Two Hundred Seventy Five Dollars ($265,275.00). This is to be the cash price. Also, this price is for surface only—no minerals or royalties go with this land. Our sales commission will be the normal six percent (6%). You will agree to furnish a policy of title insurance.
The six (6) deer blinds go with the ranch, but farm implements and mobile home and butane tanks are not included.
Compton and Compton agrees to use diligence to procure a purchaser according to terms hereof."

dated May 1, 1973, and both of which were signed by Compton and Crews. The letter agreement which was accepted by Taggart reads as follows:

"May 1, 1973

Mr. Tom Crews
1328 ·Lincoln Drive
Alice, TX. 78332

Dear Mr. Crews:

This letter will confirm our agreement on a sixty (60) day listing from May 1, 1973, for Compton & Compton Company, to sell one thousand nine hundred sixty five (1,965) acres, more or less, in Duval County, owned by you, to George Taggert [sic], III.

The sale price agreed on is One Hundred Thirty Five Dollars ($135.00) per acre, or a total price of Two Hundred Sixty Five Thousand, Two Hundred Seventy Five Dollars ($265,275.00). This is to be the cash price. Also, this price is for surface only—no minerals or royalties go with this land.

Our sales commission will be the normal three percent (3%). You will agree to furnish a policy of title insurance.

The six (6) deer blinds go with the ranch, but farm implements and mobile home and butane tanks are not included.

Compton and Compton agrees to use diligence to procure a purchaser according to terms hereof.

Sincerely,

COMPTON & COMPTON

/s/ M. A. Compton, Jr.
M. A. Compton, Jr.

ACCEPTED:

/s/ Thomas W. Crews
Tom Crews"

The second letter agreement which was also signed reads exactly the same as the agreement hereinabove set forth, except that it does not contain the name of the purchaser "George Taggart, III", the sale price is $145.00 per acre rather than $135.00 per acre; the sales commission is six percent rather than three percent.

Taggart's partners thereafter were shown the ranch and they accepted it; and, about a week later, appellant was shown the signed letter agreement of May 1st, hereinabove set forth and Taggart verbally accepted the offer to sell, and Compton thereafter communicated such acceptance to Crews. In addition thereto, Taggart accepted such offer in writing both by letters and by telegram.

Taggart then made arrangements to pay the consideration in cash; however, Crews refused to go through with the sale. Crews does not deny that he signed the letter agreement of May 1, 1973, which was accepted by Taggart, but asserts that he had advised Compton on many occasions that the only way that he would sell the ranch was that it had to be agreed to by his banker and his tax attorney; and that such sale was subject to their approval; and that he told Compton this at the time he signed the letter agreement. Crews said that he discussed such proposed sale with the banker and tax attorney and that they both disapproved; that the tax attorney told him that it would be disadvantageous of him to take the consideration all in cash

and that the banker told him that it was not a good sale for a number of reasons.

Taggart testified that in reliance upon such contract and agreement, be bought about 100 Mexican steers to put on such property; that after he took delivery of the steers, he did not have a place to put them and that it was necessary to put such cattle on a lease near Mathis, where it cost $3.50 per head per month; that he had other expenses; that his credit had been tied up at the banks, which was costly to him; that because of the dispute, he lost opportunity to buy other places. He further testified that Crews never told him that the proposed sale would have to be subject to the approval of the banker and tax consultant.

In his pleadings, appellant asserted that (1) appellee or his duly authorized agent, Compton, made appellant an offer and right to purchase the land in question upon the terms and conditions set out in the document dated May 1, 1973, expressly naming appellant; (2) appellant timely accepted the offer, exercised the right to purchase orally and in writing and, thereafter, acted upon the contract and materially changed his position; (3) appellant performed all conditions precedent and has tendered the cash price and expressed the willingness to perform; (4) appellant has no adequate remedy at law and that the contract was and is binding upon the parties and appellant is entitled to specific performance.[2]

Appellee asserts that the trial court properly granted his motion for summary judgment because: (1) the writing upon which appellant's suit is based is not an offer to sell the subject property to Taggart but is only a real estate listing contract; (2) such writing fails to satisfy the requirements of the Statute of Frauds (Vernon's Tex.Bus. & Comm.Code Ann. § 26.01 (1968), commonly called the Statute of Frauds)[3]; (3) as a matter of law, there was no privity of contract between Taggart and Crews; (4) as a matter of law, Taggart was not a third party beneficiary; and (5) there was no meeting of the minds with regard to whether the proposed sale was subject to the approval of appellee's banker and tax consultant.

A party who moves for a summary judgment has the burden of establishing his right thereto as a matter of law and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the moving party. Campbell v. Avinger, 505 S.W.2d 788 (Tex.1974); Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970); Great American

---

2. In the alternative, appellant pleaded (1) that Compton and appellee entered into the contract dated May 1, 1973, in which they agreed that such property would be sold to appellant (expressly naming him) upon the terms and conditions therein set forth; (2) that a part of the consideration of said contract was a three percent sales commission to be paid to Compton by appellee; (3) that it was the intention of those parties to benefit appellant with the right to purchase such property upon the terms and conditions therein set forth; (4) that appellant timely accepted the terms and provisions therein provided and in reliance upon such contract, appellant expended various sums of money, changed his position, and acted upon such contract; (5) that all conditions have been performed by appellant and that appellant has tendered payment and performance; (6) that appellant is a third party beneficiary to such contract.

Appellant further pleaded in the alternative that the contract was breached by appellee and that appellant has been damaged in the amount of the difference between the cash contract price and the reasonable cash market value of the land.

3. Appellee asserts that the writing fails to satisfy the requirements of the Statute of Frauds in several respects: (1) the contract fails to provide a date for the closing of the contract; (2) it fails to provide a date for the surrender of possession of the property by appellee; (3) it fails to describe the property in question; (4) it fails to provide the amount of escrow money to be deposited by the purchaser; (5) it fails to designate an escrow agent; and (6) it fails to create any right or impose any obligation upon either appellant or appellee upon which a writ of action can be predicated.

Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41 (Tex.1965). It is settled that the question on appeal and in the trial court is not whether a summary judgment proof raises fact issues with reference to essential elements of a cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. The burden of proof is on the movant and all doubts as to the existence of a genuine issue of material fact are resolved against him. All conflicts and evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. Farley v. Prudential Insurance Company, 480 S.W.2d 176 (Tex.1972).

A memorandum is required by the Statute of Frauds, not for the purpose of obtaining a contract in writing, but merely to furnish written evidence, signed by the party to be charged, of the obligation to be enforced against him. Therefore, a valid memorandum of the contract may consist of letters and telegrams signed by the party to be charged, and addressed to his agent or the other party to the contract, or even to a third party not connected with the transaction. Adams v. Abbott, 151 Tex. 601, 254 S.W.2d 78 (1952).[4]

The law is well settled that a third person may sue to enforce a contractual provision made for his benefit but to entitle him to enforce such provision, it must be shown that the contracting parties intended to make same for his benefit. The intention of the contracting parties in this respect is of controlling importance. It becomes necessary therefore to examine the foregoing provision in the light of attending circumstances to ascertain the intention of the parties to said instrument in making said provision.[5] Banker v. Breaux, 133 Tex. 183, 128 S.W.2d 23 (Tex.Comm'n App.1939, opinion adopted); 13 Tex.Jur.2d Contracts § 352 (1960).

Appellant's basic contentions on this appeal may be summarized as follows: (1) that the letter of May 1, 1973, sued upon by him constituted a contract in writing between appellant and appellee in that he was a party to such letter agreement and was expressly named as the purchaser therein; that such letter agreement was

---

4. The Supreme Court in Adams cites Street v. Johnson, 96 S.W.2d 427 (Tex.Civ.App.—Amarillo 1936, no writ), wherein the Court said:

"'A memorandum which states a sale of land, identifying it by an adequate description, and which specifies the price and is dated and signed by the seller, is sufficient to support a suit for specific performance against him.

Nor need the writing contain all of the stipulations upon which the parties may have agreed.

The object of the statute was to abrogate parol titles and this is sufficiently accomplished by a promise to convey the land * * without requiring the other terms of the agreement to be stated. . . .

When the memorandum contains within itself, all the particulars of a concluded contract, it need only be signed by the party against whom it is sought to be enforced:

. . . .

The written evidence that is required by the statute need not be comprised in a single document, the requirement may be satisfied by two or more scripts in combination—for instance, letters passing between the parties or telegrams. . . .

A letter or telegram sufficient as to contents and signature to constitute a memorandum satisfying the statute of frauds, or a part of such memorandum if more than one writing is involved, is adequate for this purpose, even though it is not intended for, addressed, delivered, or known to the other contracting party. . . .'"

5. Whether a third party is a third party beneficiary depends on the intention of the parties as expressed in the language used in the instrument itself. Parties are presumed to contract for themselves, and it follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties. O'Boyle v. DuBose-Killeen Properties, Inc., 430 S.W.2d 273 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.).

signed by Crews, the party to be charged, and the real estate broker and was accepted by appellant both orally and in writing; and that such letter constituted a binding and enforceable contract between Crews and himself. (2) In the alternative, that he was a third party beneficiary to the contract, which contract was specifically enforceable by him. (3) That the letter dated May 1, 1973, clearly satisfies the requirements of the Statute of Frauds. (4) That there are disputed issues of fact which must be determined by the trier of the facts after a conventional trial.[6] In this respect, appellant asserts that there is a genuine dispute as to: (a) exactly what the letter means; (b) what the intent of the parties was;[7] (c) whether appellee made verbal conditions upon which the contract was contingent; (d) whether or not the letter is only a real estate listing contract; (e) whether or not the intention of the parties was to benefit Taggart; (f) whether Taggart was the third party beneficiary to the contract.

■ The record clearly raises a material issue of fact. The summary judgment proof does not establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of appellant's cause of action.

The trial court erred in granting appellant's motion for summary judgment, and the judgment of the trial court is reversed and remanded.

CADENA, J., concurs in the result.

6. In Chilcoat v. First Victoria National Bank, 421 S.W.2d 122 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.), the appellate court reversed and remanded a summary judgment granted by the trial court where the sole point of error was that the trial court erred in granting a summary judgment because there was a material issue of fact as to whether appellee was a third party beneficiary, the appellate court holding that the record disclosed the presence of a genuine issue as to a material fact as to whether appellee was a third party beneficiary.

7. Simmons and Simmons Construction Company v. Rea, 155 Tex. 353, 286 S.W.2d 415 (1955) was a suit for damages for breach of contract which involved a question of the intention of the parties. The Supreme Court stated that intention is usually an inference to be drawn by the fact finder from other facts and circumstances in evidence.