Berryhill 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00523-CV







Dixie Berryhill, Administratrix of the Estate of Helen Ferguson, Deceased, Appellant



v.



Rusty Carroll and Rebecca Carroll, Appellees








FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY


NO. 18,104, HONORABLE EDWARD S. JOHNSON, JUDGE PRESIDING








 Appellant Dixie Berryhill, administratrix of the estate of Helen Ferguson,
refused to acknowledge the validity of an option agreement executed by Charles Cleveland,
Ferguson's former guardian, and appellees Rusty and Rebecca Carroll. The Carrolls brought
this action requesting specific performance of the agreement, which the probate court (1)
subsequently ordered. Berryhill appeals from the judgment of the probate court. She argues
that the court should not have enforced the agreement because it did not meet the requirements
of section 27 of the Texas Probate Code and the Statute of Frauds. We will affirm the probate
court's judgment.

BACKGROUND


 In 1988, Charles Cleveland was appointed guardian of the estate of Helen
Ferguson. At that time, Ferguson lived in a nursing home and needed someone to manage her
personal affairs. When Cleveland took over as guardian, he discovered that Ferguson did not
have enough money to cover her expenses; however, she did own property in Bell County. 
Cleveland decided to sell Ferguson's house and the land surrounding it to support her. (2)

 Before Cleveland placed the house on the market in 1989, he walked through it
and found it uninhabitable. (3) Cleveland also had the house and the land surrounding it
appraised and the appraiser estimated the market value of the house to be between $23,400 and
$25,000. After the appraisal, Cleveland obtained the probate court's approval to sell the house
as the Probate Code required. See Tex. Prob. Code Ann. §§ 341, 346 (West 1980). (4)

 In the spring of 1990, appellees Rusty and Rebecca Carroll expressed an interest
in purchasing Ferguson's house. However, the Carrolls told Cleveland that they were
interested in the house only if it included both the North and South Gardens. Additionally, the
Carrolls told Cleveland that they could not afford to buy the house outright until they sold
their own house. Because Ferguson's house was not ready for occupancy, the Carrolls did not
sell their house immediately. Therefore, they wanted to finance the purchase of the Ferguson
house. They discovered, however, that the Probate Code required them to make a twenty
percent downpayment on the house in order to finance it. Tex. Prob. Code Ann. § 348(a)
(West 1980). The Carrolls could not afford this downpayment and could not obtain third-party
financing for the purchase because of the poor condition of the house. As a result, Cleveland
and his attorney, Mike Gibbs, devised a lease-option plan that allowed the Carrolls to sign a
two-year lease and included an option to buy the house at any time during the term of the
lease. The option permitted the Carrolls to either pay in cash or finance the purchase of the
house. (5) Their lease payments would be applied to the purchase price of the house.

 Gibbs attempted to draft lease and option agreements to fit the Carrolls'
specifications. The option agreement specified that the option period would run from July 20,
1990 to July 19, 1992. The agreement included a description of the property; however, this
description was not based upon any survey taken of the land. The agreement also allowed for
third-party financing, but it did not allow for owner financing. Cleveland applied to the
probate court for permission to execute the lease and option agreements. On June 26, 1990,
the probate court approved those agreements. (6) Cleveland signed the option agreement on July
6, 1990. He then brought it before the probate court for approval. On July 10, 1990, the
probate court rendered an order confirming the lease of the Ferguson house and approving the
option agreement between Cleveland and the Carrolls.

 When Cleveland forwarded the option agreement to the Carrolls for their
signature, they discovered two problems: (1) an inadequate legal description of the property
that did not include the South Garden, and (2) no provision for owner financing. As a result,
the Carrolls did not sign the agreement. They did, however, execute the lease and start
making improvements to the house.

 Cleveland acknowledged that the South Garden should have been included in the
property's description. He informed the probate court that the option agreement inaccurately
described the property that was supposed to be conveyed and asked the court's permission to
hire a surveyor to make a description that would include the South Garden. In early
December 1990, the probate court granted Cleveland's request; later that month, the property
was surveyed. Gibbs then attached the new description to the option agreement and placed it
in his file. (7) The Carrolls did not sign the 1990 agreement.

 In August 1991, Helen Ferguson died. Cleveland applied to the probate court
to be appointed the administrator of her estate; however, Dixie Berryhill, Ferguson's cousin,
also came forward and applied to be administratrix. Because she was a relative, the court
named Berryhill administratrix of Ferguson's estate.

 In 1992, Cleveland and the Carrolls discovered that the option agreement had
never been changed to allow owner financing. They asked Gibbs to prepare a new option
agreement (the "1992 option agreement") that allowed such financing. This agreement
contained an accurate description of the property to be conveyed. In May 1992, the probate
court once again confirmed the new option agreement by rendering an order confirming the
sale of real estate. Both Cleveland and Rusty Carroll signed this new option agreement on
June 9, 1992. On June 10, 1992, the Carrolls exercised their option to buy the Ferguson
house. The Carrolls continued to make monthly payments on the house after giving notice of
their exercise of the option.

 This cause arose when Berryhill refused to honor the option agreement. The
Carrolls filed suit in the probate court seeking specific performance of the option agreement
and paid the remainder of what they owed on the house into the registry of the court. 
Berryhill contended that neither option agreement could be specifically enforced. She argued
that the 1992 option agreement was void due to the death of Helen Ferguson in 1991. She
claimed that the 1990 agreement was also void because the Carrolls never signed it and
because it did not accurately describe the land to be sold to the Carrolls.

 The same probate court that ordered the sale of the Ferguson home found that,
in July of 1990, Cleveland and the Carrolls executed an option agreement that did not
accurately describe the property that was the subject of their agreement. The court further
found that a court-approved survey was prepared and that the property description in the
option agreement was clarified on December 30, 1990. The court concluded that this
clarification "accurately described the property which the parties always intended to convey." 
The probate court also found that the Carrolls relied upon the validity of the option agreement
by selling their old house and by spending in excess of $30,000 to refurbish the Ferguson
house. Finally, the court determined that the Carrolls had fully performed the conditions of
the option agreement by paying the estate the purchase price of $30,000 in cash. As a result
of these findings, the court concluded that the Carrolls exercised their option to buy the
Ferguson house on June 10, 1992 and, therefore, were entitled to specific performance of the
agreement. Berryhill challenges the probate court's judgment in six points of error.



DISCUSSION


Probate Code

 In her first, second, and third points of error, Berryhill contends that the
probate court erred as a matter of law in concluding that the Carrolls were entitled to specific
performance of the option agreement. She contends that the court did not have the authority to
order specific performance under section 27 of the Probate Code for two reasons: (1) the
1992 option agreement was executed after Ferguson's death, and (2) the 1990 option
agreement was defective under the Probate Code requirements.

 The Texas Probate Code gives the probate court the authority to order specific
performance of agreements entered into prior to a decedent's death. Tex. Prob. Code Ann.
§ 27 (West 1980). For an agreement to be enforceable by specific performance, it must be in
writing and legally effective as an agreement. Id. Additionally, the party seeking to enforce
the agreement must show that it has a right to specific performance. Id.

 For the option agreement between Cleveland and the Carrolls to be legally
enforceable, it must meet both the Code requirements and the normal requirements for a sale
of real estate. A guardian has authority to sell real estate belonging to a ward. See Tex. Prob.
Code Ann. § 341 (West 1980); 42 Tex. Jur. 3d Guardianship and Conservatorship § 213
(1985). To sell a ward's real estate, the guardian must apply for permission from the probate
court. See Tex. Prob. Code Ann. § 342 (West 1980) (outlining required contents of
application for sale of real estate); 42 Tex. Jur. 3d Guardianship and Conservatorship §§ 217,
219. For the sale to be legally executed under the Code, the probate court must determine that
the sale is necessary or advisable and order the sale to be made. Tex. Prob. Code Ann. § 346
(West 1980).

 Berryhill argues that the 1992 option agreement does not meet the requirements
of section 27 of the Code because Cleveland had no power to execute an option agreement
after Ferguson's death. As a result, Berryhill contends that the probate court cannot order
specific performance of that agreement. She also asserts that the probate court had no
authority to order the sale of real estate after Ferguson's death.

 The guardianship of an incompetent ward ceases when the ward dies. Id.
§ 404(b)(2). Upon a ward's death, the guardian retains the power to make funeral
arrangements, to pay debts out of the estate, and to submit a final accounting. See id. §§
404A, 405(b). The guardian, however, retains no authority to sell the deceased ward's
property. The death of the ward also terminates the probate court's authority to order the sale
of real estate. Files v. Buie, 112 S.W.2d 714, 716 (Tex. 1938); Gutierrez v. Gutierrez, 786
S.W.2d 112, 113 (Tex. App.--San Antonio 1990, no writ). As a result, we agree that
Cleveland did not have the power to execute the 1992 option agreement and that the probate
court did not have the power to order a sale of the Ferguson house based on that agreement. 
However, the court's judgment did not order the specific performance of the 1992 option
agreement. Instead, it ordered that the 1990 option agreement be enforced.

 Berryhill argues that, as a matter of law, the probate court could not order
specific performance of the 1990 option agreement because this agreement was not a legally
executed written agreement under section 27 for two reasons: (1) the Carrolls failed to sign it,
and (2) the description of the property in the order of sale is incorrect. The effect of the
Carrolls' failure to sign is controlled by the law of contracts rather than by the Probate Code. 
Options are unilateral contracts. They bind the optionor to hold an offer open; however, they
do not bind the optionee to do anything. Northside Lumber & Bldg. Co v. Neal, 23 S.W.2d
858, 859 (Tex. Civ. App.--Fort Worth 1929, no writ). In the instant cause, the Carrolls are
optionees seeking to enforce an option signed by Cleveland, the optionor. Cleveland's
signature is binding, and the option agreement is not invalid due to the Carrolls' failure to
sign. See Augusta Dev. Co. v. Fish Oil Well Servicing Co., 761 S.W.2d 538, 544 (Tex.
App.--Corpus Christi 1988, no writ) ("[I]n order to constitute a contract in writing, a writing
does not necessarily have to be signed by both parties, so long as the party not signing accepts
the contract by his acts, conduct or acquiescence.").

 Berryhill also contends that the 1990 agreement was not legally executed
because the descriptions of the property in the option agreement and in the probate court's
order of sale are insufficient. She argues that these descriptions do not describe the same tract
of land that the probate court ordered conveyed.

 A probate court's order for the sale of real estate must specify the property to
be sold and give a description of that property. Tex. Prob. Code Ann. § 346(a) (West 1980). 
The description in the order of sale is essential to the validity of the sale by a guardian. 
Schaeffer v. Williams, 208 S.W. 220, 223 (Tex. Civ. App.--San Antonio 1918, writ ref'd). 
Thus, when there is a dispute concerning the description of the property sold, the description
in the order of sale must control. Id. However, in this cause, there was never any dispute
over what property the Carrolls had an option to buy. From their first negotiations with
Cleveland, the Carrolls insisted that the South Garden be included with the Ferguson home,
and Cleveland agreed that the South Garden should be included in the sale. The probate court
recognized that both parties understood what land was to be included in the option agreement. 
Therefore, when the parties informed the court that the description of the Ferguson home in
the 1990 option agreement was inadequate, the court allowed Cleveland to hire a surveyor to
correct the description. At trial, the same probate court found that the December 30, 1990
survey accurately described the property that the parties had always intended to convey. As a
result, the probate court found that the survey clarified the option agreement and established
an accurate legal description of the property conveyed. This was all accomplished at a time
when Ferguson was still living and her guardian, Cleveland, had full authority to act on her
behalf.

 Given these facts, the 1990 option agreement was a legally executed written
agreement for the purposes of section 27 of the Code. We overrule Berryhill's first, second,
and third points of error.



Statute of Frauds

 In her fourth, fifth, and sixth points of error, Berryhill asserts that, as a matter
of law, the December 30, 1990 legal description of the property cannot modify the July 6,
1990 option agreement. She claims that the Statute of Frauds and the parol evidence rule
prevent such a modification. As a result, she contends that the 1990 option agreement is too
indefinite to be enforced by specific performance.

 An option to purchase real estate is within the Statute of Frauds; therefore, it
must be in writing and signed by the optionor. Tex. Bus. & Com. Code Ann. § 26.01(a)
(West 1987); Haskell v. Merrill, 242 S.W. 331, 334 (Tex. Civ. App.--Amarillo 1922, writ
dism'd). Essential elements of a contract to sell real estate cannot be supplied orally. 
Hereford v. Tilson, 200 S.W.2d 985, 988 (Tex. 1947). The Statute of Frauds, however, does
not require that the written evidence of an agreement be contained in a single document. 
Central Power & Light Co. v. Del Mar Conservation Dist., 594 S.W.2d 782, 789 (Tex. Civ.
App.--San Antonio 1980, writ ref'd n.r.e.). Even a letter or a telegram not intended for the
other contracting party may be sufficient to satisfy this requirement. Id. at 790. However,
under the parol evidence rule, terms in a written contract cannot be supplemented by prior or
contemporaneous agreements. Black's Law Dictionary 1117 (6th ed. 1990); see Massey v.
Massey, 807 S.W.2d 391, 405 (Tex. App.--Houston [1st Dist.] 1991), writ denied, 867 S.W.2d
766 (Tex. 1993). The parol evidence rule applies to both oral and written prior or
contemporaneous agreements. Black's Law Dictionary, supra, at 1117.

 As noted above, the 1990 option agreement was a written agreement. It is true
that the copy of the option agreement attached to the probate court's order of sale did not
contain the period of the option or a sufficient legal description of Ferguson's property. 
However, the option term was spelled out in the probate court's order of sale and the legal
description was clarified by the court-ordered survey in December 1990. Because these
clarifications were both in writing, they are not prohibited by the Statute of Frauds. 
Additionally, because these clarifications were made subsequent to the original option
agreement, they are not precluded by the parol evidence rule. The 1990 option agreement was
in writing and was sufficiently definite to be enforced by specific performance.

 Even were we to conclude that the 1990 agreement did not meet the requirement
of the Statute of Frauds, it still would be enforceable by specific performance. Sufficient
partial performance of an oral agreement can take it out of the Statute of Frauds. Oak Cliff
Realty Corp. v. Mauzy, 354 S.W.2d 693, 695 (Tex. Civ. App.--Fort Worth 1962, writ ref'd
n.r.e.).



[A]n oral contract which has been partially performed may be enforced in
equity if denial of enforcement would amount to a "virtual fraud" in the sense
that the party acting in reliance on the contract has suffered a substantial
detriment . . . and the other party, if permitted to plead the statute, would reap
an unearned benefit.



Central Power & Light Co., 594 S.W.2d at 790. Purchasers of real estate can show sufficient
partial performance to overcome the Statue of Frauds by (1) paying the consideration; (2)
possessing the property; and (3) making valuable and permanent improvements upon the land
with the consent of the seller. Hooks v. Bridgewater, 229 S.W. 1114, 1116 (Tex. 1921);
Rittgers v. Rittgers, 802 S.W.2d 109, 113 (Tex. App.--Corpus Christi 1990, writ denied).

 The probate court found that the Carrolls have (1) fully paid the purchase price
of the Ferguson house, (2) continually possessed the property since July 6, 1990, and (3) made
over $30,000 worth of improvements to the property. Invalidating the option agreement
because of an alleged Statute of Frauds violation would constitute fraud. The Carrolls, who
have relied on the validity of this agreement, would suffer a substantial loss and Berryhill
would reap an unearned benefit. Therefore, the 1990 option agreement is enforceable
notwithstanding the Statute of Frauds. Because the 1990 option agreement met the
requirements of the Statute of Frauds and because the Carrolls fully performed their
obligations under the agreement, Berryhill's fourth, fifth, and sixth points of error are
overruled.

 Having concluded that the 1990 option agreement met the requirements of
section 27 of the Probate Code and the Statute of Frauds, the judgment of the probate court is
affirmed.



 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: August 16, 1995 

Do Not Publish
1.   County courts have the general jurisdiction of probate courts. Tex. Prob. Code
Ann. § 4 (West 1980 & Supp. 1995). In the instant case, the county court acted as a
probate court. The Honorable Edward Johnson presided over both the trial in this case
and the sale of the Ferguson home.
2.   The land surrounding the house included the "North Garden" and the "South
Garden." Ferguson also owned other property near the house; however, Cleveland did
not intend to sell this property with the house.
3.   The house was in great need of repair. For example, the floors in some of the
rooms were unstable and needed replacing. Sewer lines were unconnected, and the
bathroom was unusable. Also, the house was occupied by cats and smelled of their
excrement.
4.   Many sections of the Probate Code were amended in 1993. See Act of June 16,
1993, 73d Leg., R.S., ch. 712, 1993 Tex. Gen. Laws 2788-2796. However, these
amendments do not apply to the estates of persons who died before their effective date; the
former code applies to these estates. Id. § 8. Because Ferguson died in 1991, we cite to the
former code provisions in this opinion.
5.   The lease was to allow either owner financing or third-party financing.
6.   The court approved a two-year option agreement. At the time the court signed
the order granting permission to execute the agreements, the specific dates had not been
filled in. However, it is clear from the order that the court approved a two-year option
period to coincide with the term of the lease.
7.   The 1990 option agreement was never modified with respect to owner financing.