The AMERICAN BANK OF WACO, Appellant,

v.

A. Leon THOMPSON, Jr., et al., Appellees.

No. 10–82–147–CV.

Court of Appeals of Texas, Waco.

May 5, 1983.

Rehearing Denied June 2, 1983.

Hilton H. Howell, Naman, Howell, Smith & Lee, P.C., Waco, for appellant.

Vance Dunnam, Jim Meyer, Dunnam, Dunnam, Horner & Meyer, Waco, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by Defendant American Bank from $150,000.00 judgment for Plaintiffs Thompson, Taylor and wife in suit for breach of an oral agreement to provide permanent financing for a loan at 9¾% interest per annum amortized over 15 years.

Plaintiffs sued Defendant alleging Plaintiffs contacted Defendant for interim and permanent financing on constructing a building on land owned by Plaintiffs; that Defendant agreed to an interim loan at 10% interest and upon completion of the construction Defendant agreed to make a permanent loan at 9¾% interest per annum amortized over 15 years with monthly payments; that thereafter Defendant refused to convert the interim financing into a permanent loan; that Plaintiffs had to secure temporary financing from another bank at interest rates greater than the 9¾%.

Trial was to a jury, pertinent findings of which are summarized as follows:

1. Defendant agreed with Plaintiffs to provide permanent financing for the loan at an interest rate of 9¾% per annum amortized over a 15 year period.

2. Plaintiffs' damage as a result of Defendant's failure to provide the permanent financing was $100,000.00.

3. Plaintiffs' damage which will be sustained in the future due to Defendant's breach of the oral agreement is $50,000.00.

4. Defendant requested either the Webster-Thompson indebtedness or the Thompson-Taylor real estate loan be moved from the bank or paid off by 1979.

5. Plaintiffs did not elect to move the real estate loan to another bank in preference to moving the Webster-Thompson line of indebtedness.

6. Defendant's commitment to make the long-term real estate loan was not cancelled or rescinded by mutual agreement prior to the time the loan was moved to another bank.

7. Plaintiffs did not request Defendant to comply with the commitment to convert the short-term real estate

loan to a long-term loan during 1978 or 1979.

8. Plaintiffs were not estopped from claiming a breach of the commitment after they requested the Defendant to return the loan commitment fee.

9. It was not common usage in banking to qualify a long term real estate loan on the material adverse change of the borrower's financial condition or on his defaults of any obligations owed to the bank.

10. Plaintiff Thompson did experience material adverse change to his financial conditions.

11. Plaintiffs defaulted on their extended real estate notes.

12. Defendant prior to September 24, 1979, did not positively and unconditionally inform Plaintiffs that it would not provide permanent financing on the loan.

The trial court rendered judgment on the verdict for Plaintiffs against Defendant for $150,000.00.

Defendant appeals on 6 points:

Point 1 contends the trial court erred in failing to find the oral agreement violated the requirement of Tex.Bus. & Com.Code Ann., § 26.01(b)(6) that contracts not performable within one year be in writing; and point 2 asserts the trial court erred in failing to find the oral agreement violated Sec. (b)(4) of the Statute of Frauds (Sec. 26.01 Tex.Bus. & Com.Code), that a contract secured by a lien on real estate be in writing.

The record reflects:

(1) Two letters dated September 13, 1979, on letterhead of the American Bank; signed by the Senior Vice President of the Bank; addressed to two participating banks; positively identifying the borrowers, A. Leon Thompson, and Mr. and Mrs. Julius Taylor; and stating the bank's essential obligations and commitment to the loan agreement;

(2) an American Bank Charge Memorandum of the commitment fee for the long term loan charged against the plaintiff's account, stamped December 28, 1978 by the Defendant.

A memorandum is required by the Statute of Frauds, not for the purpose of obtaining a contract, but merely to furnish written evidence, signed by the party to be charged, of the obligation to be enforced against him. A valid memorandum of a contract may consist of letters and memoranda signed by the party to be charged and addressed to the other party to the contract or to a third party not connected with the transaction. *Central Power & Light Co. v. Del Mar, etc.* CCA (San Antonio) NRE, 594 S.W.2d 782.

■ American Bank's letters and memo collectively set forth the obligation of American Bank, the party to be charged, and clearly identifies the parties to the oral agreement. There was sufficient writing to remove the oral agreement from the Statute of Frauds. See: 26 Tex Jur 2d p. 242 et seq. Points 1 and 2 are overruled.

Points 3 through 5 assert the trial court erred in rendering judgment for the Plaintiffs because the agreement contemplated performance of obligations and conditions by Plaintiffs which were never performed, thereby excusing the Defendant from fulfilling its obligations.

Defendant contends Plaintiffs had to perform four acts before the Defendant was required to convert the short-term loan to a permanent loan, viz. (1) make a further request for the loan conversion; (2) execute and acknowledge renewal and extension agreements to renew a deed of trust and mechanic lien that were securing notes held by Defendant; (3) execute new notes and liens on the real estate; (4) timely make payments of principle and interest on the promissory notes held by Defendant through assignment.

■ Defendant did not prove as a matter of law that these conditions were terms of the contract, nor were any special issues requested as to whether the Plaintiffs were required to perform these obligations as a

condition for the conversion of the loan. Therefore, Defendant waived any defenses based upon the existence of these conditions and these fact issues regarding the parties' obligations and the breaches of such obligations will be presumed as having been found by the trial court in favor of the Plaintiffs. Rule 279, T.R.C.P., *Morgan v. Young,* CCA (Beaumont) NRE, 203 S.W.2d 837, *Dee v. Parish,* S.Ct., 327 S.W.2d 449.

Assuming, arguendo, that these obligations were conditions to the agreement, their breach would not necessarily excuse the other party from performance. Where the obligations imposed on one party are independent or subsidiary to the obligations of another, a breach by one party may not discharge the other from continuing its performance of the contract. A subsidiary condition is one which is not regarded as vital to the existence of the contract. See *Earl Hayes Rents Cars v. City of Houston,* CCA (Houston 1st Dist) NRE, 557 S.W.2d 316.

In the instant case, the Plaintiff Thompson testified he understood there were no conditions to the contract that he entered into with the Defendant. The evidence showed and the jury found it was not common banking practice to qualify permanent financing on the financial changes of a borrower or on his default of any obligations owed to the bank. Despite Plaintiffs' late payments, Defendant withdrew from Plaintiffs' account a 1% commitment fee, a charge made during the first steps of executing a long-term loan. The evidence shows that the alleged obligations were not vital conditions that needed to be performed before Defendant was obligated to perform its promise. The trial court was authorized to conclude that Plaintiffs' failure to perform these acts did not excuse Defendant's breach. Points 3 through 5 are overruled.

Point 6 asserts the damages were not in contemplation of the parties or foreseeable at the time the contract was entered into in July 1979. Appellant asserts its agreement to make a long-term loan at 9¾% could only give rise to damages no greater than ¼ of 1% since the parties could not have anticipated interest rates beyond 10% due to T.R.C.S. art. 5069–1.02 which fixed the maximum interest rate at 10% per annum. This law was amended in 1981 to permit interest rates beyond 10%. Appellant contends the damage finding was an approximation of the difference between the 9¾% interest rate that the Plaintiffs were promised and the 21.5% rate on the alternative short-term notes they were compelled to pay.

In a cause of action for breach of an agreement to loan money, Plaintiffs may recover the excess amount of interest he was compelled to pay in borrowing the money elsewhere. *Davis v. Small Business Investment Co. of Houston,* CCA (Texarkana) NRE 535 S.W.2d 740. These damages that naturally follow from the breach of the agreement are direct. In the case of direct damages the law necessarily imposes the measure whether or not the defaulting party possessed any knowledge whatever of the implied and natural consequences of the breach or of the amount the party would suffer on account of such breach. *McKibbin v. Pierce,* CCA, NWH 190 S.W. 1149. The trial court correctly awarded Plaintiffs the actual damages resulting from the Defendant's breach of contract. Point 6 is overruled.

AFFIRMED.