**J.W. McFARLANE, et al., Appellants,**

v.

**Robert E. CLEVENGER, Appellee.**

**No. 13-83-036-CV.**

Court of Appeals of Texas,
Corpus Christi.

Dec. 29, 1983.

Rehearing Denied Feb. 23, 1984.

Ann Ryan Robertson, Reynolds, Allen & Cook, Inc., Houston, for appellants.

William Pannill, Pannill & Reynolds, Houston, for appellee.

Before BISSETT, UTTER and GONZALEZ, JJ.

OPINION

BISSETT, Justice.

In this summary judgment case, the issue to be resolved is whether Robert E. Clevenger, plaintiff in the trial court and appellee in this Court, established as a matter of law that he was the owner of an undivided three-fourths (¾) interest in the working interest of the "Stevens" and "Garrett" oil, gas and mineral leases in DeWitt County, Texas. In resolving that issue, we must decide whether the summa-

ry judgment evidence raised a fact issue as to whether the plaintiff obligated himself to reassign, after written demand, his interests in the leases to the defendant J.W. McFarlane.

The defendants J.W. McFarlane, George A. Musselman, Francitas Gas Company, Howell Drilling, Incorporated, J.B. Carter, Jr., Grande Oil Company, Lee A. Durst, Jaimie B. Musselman and Kemp D. Solcher, have timely appealed from the judgment which was rendered against them and in favor of plaintiff. Henceforth, plaintiff will be referred to as "Clevenger"; the defendant J.W. McFarlane will be referred to as "McFarlane"; and the remaining defendants will be referred to as the "other defendants."

The oil, gas and mineral leases involved in this case are the lease from Ardic Ray Stevens, et al., lessor, to Dix R. Turnbow, lessee, dated September 12, 1974, hereinafter referred to as the "Stevens lease," and the lease from Edd Garrett, et al., lessor, to Dix R. Turnbow, lessee, dated September 13, 1974, hereinafter referred to as the "Garrett lease."

"In order to uphold a summary judgment, the moving party must establish that as a matter of law there are no genuine issues of fact." *Wesson v. Jefferson Savings & Loan Ass'n,* 641 S.W.2d 903, 905 (Tex.1982).

In a summary judgment proceeding, "all doubts as to the existence of a genuine issue as to a material fact must be resolved against the moving party." *Campbell v. Avinger,* 505 S.W.2d 788, 789 (Tex.1974). Therefore, the evidence is to be viewed in the light most favorable to the party opposing the motion for summary judgment, and all conflicts in the evidence must be disregarded and the evidence which tends to support the position of the party opposing the motion must be accepted as true. *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972).

## THE PLEADINGS

Suit was instituted by Clevenger on March 31, 1981. He alleged: 1) in 1975,

McFarlane assigned to him undivided interests in the working interest in the two subject oil, gas and mineral leases in De-Witt County, Texas, and that at the same time he and McFarlane entered into an operating agreement concerning those leases, wherein he was designated "operator" and McFarlane was designated "non-operator"; 2) in 1979, McFarlane executed an instrument which purported to assign Clevenger's interest in the leases to the other defendants; 3) thereafter, production of gas was established by the drilling of two wells by the defendants, and all of the defendants pooled those leases with other leases for the production of natural gas; 4) in pooling the leases, the defendants purported to dedicate Clevenger's interest in the gas produced from the gas units, which includes the gas produced from leases partially owned by Clevenger; 5) when Clevenger learned of the pooling of the leases, he ratified the same; 6) Clevenger then contacted the defendants and offered to pay his proportionate cost of drilling and completing the two wells on the gas units, but defendants refused to recognize his ownership in the two leases or in the two gas units; and 7) the defendants refused to pay him his pro rata portion of the proceeds of production from the two gas units. Clevenger, in his petition, prayed that his ownership in the two leases and in the two gas units be determined, for an accounting, for damages resulting in McFarlane's breach of warranty in the assignments to him and in the breach of the operating agreement, and for attorney's fees.

McFarlane and the other defendants, in their answer, claimed that the provisions of the operating agreement relating to "notice" and payment of "delay rentals," which they contend were breached by Clevenger, authorized McFarlane to assign and convey Clevenger's interest in the working interest in the leases to the other defendants. They further defended on the ground that Clevenger breached the operating agreement when he failed, after written demand, to re-assign to McFarlane the interests in the leases previously assigned

to him by McFarlane. It was further alleged that Clevenger, by his actions, waived his interests in the leases, and was estopped to assert any interest in the working interest in either of the leases. It was also claimed that Clevenger had breached his fiduciary duty owed to McFarlane "by failing to act openly, honestly and in good faith in their dealings."

In addition to an answer, McFarlane and the other defendants filed counter-claims against Clevenger. Among other items of relief not necessary to detail in this opinion, they prayed for a declaratory judgment that the claimed ownership of Clevenger in the working interest in each of the leases "are of no force and effect," and that the judgment recite that "McFarlane is the owner of the disputed leasehold interest" in each of the leases, and that "the claimed ownership" of Clevenger in the leases "is invalid and of no force and effect."

Clevenger filed a motion for partial summary judgment on July 30, 1981. The motion was supported by his affidavit, which had the operating agreement attached thereto as an exhibit, and by certified copies of certain instruments, hereinafter described in detail. He alleged that his summary judgment evidence established conclusively that he "is the record owner of an undivided three-fourths (¾) interest" in each of the involved leases, and is the record owner of a "12.65% working interest" in each of the affected gas units. He further alleged that such evidence showed, as a matter of law, that the assignment from McFarlane to the other defendants is void insofar as it purports to convey his interest in the working interest in each of the affected leases to them, which assignment casts a cloud on his title that should be removed.

The defendants contested the motion for partial summary judgment by written response. They contended that genuine issues of material fact exist because of the statements contained in McFarlane's affidavit, in the operating agreement and letters from McFarlane's landman and from his attorney, and of certain provisions in the operating agreement.

The parties stipulated: 1) if it be determined that Clevenger is the owner of three-fourths (¾) of the working interest in each of the Stevens and Garrett leases, then the assignment of Clevenger's working interest in the leases by McFarlane to the other defendants constituted a breach by McFarlane of the joint operating agreement; 2) in such event, Clevenger is entitled to recover the sum of $97,315.71 as damages, and $25,000.00 as reasonable attorney's fees through the trial of the case.

## THE JUDGMENT

A partial summary judgment was rendered on November 5, 1981. It was "corrected" on February 3, 1982. The corrected partial summary judgment, which recited that it was "interlocutory until this Court shall enter its final judgment in this suit," decreed: 1) Clevenger is the record owner of an undivided three-fourths (¾) interest in the Stevens lease insofar as said lease covers fifty (50) acres thereof, (particularly described in the judgment); 2) Clevenger is the record owner of an undivided three-fourths in the Garrett lease insofar as said lease covers fifty (50) acres thereof, (particularly described in the judgment); 3) effective September 5, 1979, plaintiff's interest in the Stevens lease was pooled into the N.E. Nickel Gas Unit No. 1, and his interest in the Garrett lease was pooled into the Earl Garrett Gas Unit No. 1, resulting in a 12.65% working interest in each Unit; 4) the assignment from the defendant J.W. McFarlane to the remaining defendants is void insofar as it purports to convey plaintiff's interests in the Stevens and Garrett leases; and 5) the cloud created by such assignment on plaintiff's title to such interests is removed.

The provisions of the corrected partial summary judgment were incorporated in the final judgment, which was rendered on December 8, 1982. It was, therefore, ordered, adjudged and decreed in the final judgment that Clevenger recover attorney's fees in the sum of $25,000.00 through

the trial as well as reasonable fees and court costs from McFarlane, and that he have judgment against all defendants, jointly and severally, for damages in the amount of $97,315.71. The final judgment denied all relief prayed for by the defendants in their counterclaims.

## THE POINTS ON APPEAL

McFarlane and the other defendants do not complain in this appeal that the trial court erred in denying them the relief requested in their counterclaims. They attack only the granting of the summary judgment. They contend that the trial court erred in rendering the summary judgment because: 1) Clevenger failed to show "that there is no genuine issue of fact as to any material issue of fact and that appellee is entitled to judgment as a matter of law" (first point); 2) there is a genuine issue of material fact as to whether Clevenger gave McFarlane "notice that he no longer desired to participate in the Stevens and Garrett Leases" (second point); 3) the summary judgment evidence "shows that there are genuine issues of facts as to intent, reliance, waiver and estoppel" (third point); 4) the summary judgment evidence "shows that there is a genuine issue of material fact as to whether appellee has breached the agreement" (fourth point); and 5) the summary judgment evidence "shows that there is a genuine issue of material fact as to whether appellee breached his fiduciary duty" (fifth point).

## THE SUMMARY JUDGMENT EVIDENCE

Prior to August 25, 1975, Clevenger was the owner of the working interest in the "Tom Garrett" and the "Berlin R. Thompson" oil, gas and mineral leases in DeWitt County, Texas. The acreage covered by the leases approximated four hundred (400) acres. Those leases are not involved in this lawsuit and will henceforth be referred to as the "Clevenger leases." At that time, McFarlane was the owner of the working interest in the "Stevens" and "Edd Garrett leases," which are involved in this lawsuit.

The acreage covered by the Stevens and Edd Garrett leases approximated fifty (50) acres each. Clevenger and McFarlane, both of whom desired that a test well be drilled somewhere on the original Clevenger and McFarlane leases, executed an operating agreement covering such acreage on August 25, 1975. Also, on the same date, Clevenger assigned twenty-five percent (25%) interest in the working interest in his two leases to McFarlane, and McFarlane assigned seventy-five percent (75%) interest in the working interest in the Stevens and Garrett leases to Clevenger. All such assignments were duly and promptly recorded in the Deed Records of DeWitt County, Texas. The operating agreement was not so recorded. Each of the aforesaid assignments was made "subject to the terms and provisions" of the operating agreement.

A Gas Unit, designated as the "Thompson Gas Unit," was formed pursuant to the provisions of the operating agreement, and a well was drilled on the acreage covered by the above-mentioned four leases. The well was a dry hole. It was plugged and abandoned in December, 1976. No other drilling was conducted by Clevenger on the acreage comprising the Thompson Gas Unit. Thereafter, Clevenger, individually, paid one hundred percent of the delay rental payments on the original Clevenger leases, until they expired in 1979, and McFarlane, individually, paid one hundred percent of the delay rental payments on the Stevens and Edd Garrett leases for the years 1976, 1977 and 1978.

On September 5, 1979, McFarlane assigned Clevenger's interest in the working interest in the Stevens and Garrett leases to the other defendants. Also, on September 5, 1979, the defendants pooled the Stevens lease with other leases which made up the N.E. Nickel's Gas Unit No. 1, and pooled the Garrett lease with other leases which made up the Earl Garrett Gas Unit No. 1. Production was established on each of the units. Clevenger ratified the pooling designations on July 29, 1980.

The operating agreement named Clevenger as "Operator." McFarlane was designated as "Non-operator." All delay rentals due on the leases concerned were to be paid by the operator, who was to be reimbursed by the non-operator for his proportionate share thereof.

Section 30 of the operating agreement, in pertinent part, provided:

"All notices authorized or required between the parties, and required by any of the provisions of this agreement, shall, unless specifically provided, be given in writing ..."

Section 34 of the Operating Agreement is most crucial to the resolution of the questions presented by this case. It provides, in pertinent part, that:

"Should either party hereto desire to cease payment of delay rental on any lease or leases, such party may give the other party written notice, thereof, adequately identifying each such lease, whereupon such party shall be relieved of obligation to contribute to payment of delay rental on the lease or leases identified in the notice ... Whenever either party gives notice of desire to cease payment of delay rental on any lease or leases, as above provided, if the other party should make written request therefor, the party giving such notice shall assign to the other party all of its right, title and interest in and under the lease or leases identified in such notice and specified in such request, such assignment to be made without warranty of title except as against the acts of the assigning party."

Clevenger, in his affidavit, stated:

"All of the terms and conditions of my assignment to McFarlane and his assignment to me and the Joint Operating Agreement were fulfilled by the parties with the exception that, subsequent to the completion of the No. 1 Thompson Well as a dry hole, I continued to make the full delay rental payments on the leases which I had partially assigned to McFarlane until those leases terminated. I checked with J.W. McFarlane to insure that he was continuing to make the delay rental payments on the leases he had partially assigned to me. I have never reassigned nor reconveyed the undivided interests assigned to me by J.W. McFarlane in the two Oil, Gas and Mineral Leases which are set out in Exhibit '2' and he never reassigned nor reconveyed to me the undivided interests in the leases I assigned to him."

McFarlane, in his affidavit, stated:

"In or about December, 1976, or shortly thereafter, I had a telephone conversation with Robert E. Clevenger wherein we discussed the operations under the Agreement. In that conversation we specifically discussed the payment of delay rentals under the leases in question. Mr. Clevenger told me that he did not desire to participate in the payment of delay rentals on my Garrett and Stevens Leases and I told him that I wanted to keep my leases and would pay the delay rentals myself. Mr. Clevenger also told me that he was not going to pay delay rentals on his own leases and asked me if I wanted to do so. I informed him that I did not desire to pay delay rentals on his leases.

"I relied upon what Mr. Clevenger told me in that conversation and I thereafter paid delay rentals as they became due on my Garrett and Stevens Leases for the years 1976, 1977 and 1978. At no time during those years did Mr. Clevenger advise me that he wanted to participate in the payment of delay rentals on the Garrett and Stevens Leases nor did he contribute towards the payment of those delay rentals at any time.

"After having paid delay rentals on the Garrett and Stevens Leases during the years 1976, 1977 and 1978 I discovered that I had inadvertently failed to obtain a reassignment from Mr. Clevenger of the undivided three-fourths (¾ths) interest in those leases I had previously conveyed to him under the Operating Agreement. Upon discovering that I had not yet obtained a reassignment of those interests from Mr. Clevenger I had my representa-

tives contact him in the fall of 1979 and request a reassignment."

The summary judgment's evidence establishes conclusively that during the early part of 1980 McFarlane requested in writing that Clevenger assign to him "these two (2) leases." Clevenger did not do so.

McFarlane and the other defendants contend that there is a genuine issue of material fact as to 1) whether Clevenger gave McFarlane notice that he no longer desired to make delay rental payments on the Stevens and Garrett leases; 2) whether Clevenger waived his rights to his ownership in the leases by failing to participate or pay delay rentals on the said leases during the years 1976, 1977 and 1978; and 3) whether Clevenger breached his contractual obligations by failing and refusing, upon written request, to re-assign his interest in the Stevens and Garrett leases to McFarlane.

Clevenger contends that there is no genuine issue of material fact presented by the summary judgment evidence because the statute of frauds bars the defendant's parol evidence relating to "notice," or the payment of "delay rentals," or of any promise by Clevenger to assign his interest in the Stevens and Garrett leases to McFarlane. He further asserts that the summary judgment evidence shows that there is no genuine issue of fact as to intention, reliance, waiver, estoppel, breach of the operating agreement, or breach of fiduciary duty.

It is shown as a matter of law that Clevenger is the *record* owner of three-fourths (¾) of the working interest in the Stevens and Garrett oil, gas and mineral leases. It is further conclusively shown that Clevenger ratified the pooling of the Stevens lease with other leases which created the N.E. Nickel Gas Unit No. 1, and that he ratified the pooling of the Garrett lease with other leases which created the Earl Garrett Gas Unit No. 1. Because of such ratifications, it is established as a matter of law that Clevenger is the *record* owner of an undivided 12.65% working interest in the N.E. Nickel Gas Unit No. 1, and of an undivided 12.65% interest in the Earl Garrett Gas Unit No. 1.

In support of their contention that a fact issue relating to "notice" exists in this case, McFarlane and the other defendants rely on McFarlane's affidavit relating to the telephone conversation which he had with Clevenger. They argue that as a result of such conversation, Clevenger, in essence, notified them that he did not wish to pay the delay rentals on the Stevens and Garrett leases, and when he refused to assign his interests in the leases to McFarlane, after written demand, that McFarlane became empowered to assign Clevenger's interest in the leases to the other defendants. We do not agree.

Section 30 of the operating agreement expressly provides that *all* notices required by any provision thereof be in *writing*, "unless otherwise specifically provided." Section 34 also provides for written notice if a party desired to cease payment of delay rentals in any lease subject to the agreement; the section further provides that after such party had given such written notice, he became obligated, upon written request of the other party, to assign all of his interest in the particular lease to the other party. In the instant case, there is no evidence that Clevenger, at any time, gave McFarlane written notice that he no longer desired to pay his pro-rata part of the delay rentals on the Stevens and Garrett leases. Under the plain and unambiguous provisions of the operating agreement, no duty devolved on Clevenger to assign his interests in the leases to McFarlane until he had first notified the latter, in writing, of his desire to surrender the leases or to cease payment of the delay rentals on the leases.

It is undisputed that there was an oral modification of the operating agreement with respect to the payment of delay rentals. The operating agreement required Clevenger to pay all delay rentals on the leases covered thereby. This was not done. It is undisputed that Clevenger and McFarlane agreed, after the drilling of the dry hole on the acreage subject to the agree-

ment, that each would pay all of the delay rentals on the leases originally owned by each. This was done. No one has contested that modification of the agreement. Each of the parties would have expended approximately the same amount of money even if payments of delay rentals had been made in exact accordance with the operating agreement.

A promise or agreement for the sale of land must be in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. TEX.BUS. & COMM.CODE, § 26.01 (Vernon 1964), commonly called the "Statute of Frauds."

In *Robertson v. Melton*, 131 Tex. 325, 115 S.W.2d 624, 626–627 (1938), it was stated:

"... [T]he rule is that parties to a written contract coming within the provisions of the statute of frauds may not by mere oral agreement alter one or more of the terms thereof and thus make a new contract resting partly in writing and partly in parol, the reason for the rule being that, when such alteration is made, part of the contract has to be proven by parol evidence, and the contract is thus exposed to all the evils which the statute was intended to remedy ...."

The rule announced in *Robertson v. Melton*, supra, was reaffirmed by the Supreme Court in *Michael v. Busby*, 139 Tex. 278, 162 S.W.2d 662 (1942), and in *Dracopoulas v. Rachal*, 411 S.W.2d 719 (Tex.1967).

McFarlane and the other defendants also argue that under the terms of Section 34 of the operating agreement, *oral* instead of *written* notice of a "desire to cease payment of delay rental on any lease" entitles the other party to an assignment of the affected leases. Under the plain terms of the operating agreement, we hold that it does not.

McFarlane and the other defendants also claim that the assignment from McFarlane to the other defendants is valid and sufficient to divest Clevenger of his interests in the Stevens and Garrett leases, because Clevenger, by orally notifying McFarlane

that he no longer desired to pay delay rentals on the leases, waived his ownership in the working interest in the leases. We disagree.

We know of no law which permits the record owner of an interest in land to waive his title to such interest. Defendants have not cited any such authority to us in their brief. The failure by Clevenger to pay the delay rentals on the Stevens and Garrett leases for the years 1976, 1977 and 1978, did not constitute a waiver of his title or his interests in the leases.

Clevenger proved that he had title to such interests by the introduction into evidence of valid written assignments from McFarlane. There are no written assignments of those interests, executed by Clevenger to McFarlane, or to any of the other defendants. To hold, under the record before us, that Clevenger either waived his title to his interests in the subject leases or became obligated to assign such interest to McFarlane, would amount to a divestiture of legal title to interests in land in a transaction resting partly in writing and partly in parol. That is exactly what the statute of frauds forbids.

We further hold that the statute of frauds bars the introduction into evidence of the oral conversations which McFarlane says that he had with Clevenger. The operating agreement is clear and unambiguous. In order for Clevenger to have become obligated to assign his interest in the leases to McFarlane, two things were required. *First*, Clevenger was required to notify McFarlane in writing that he no longer wanted to pay the delay rentals on the Stevens and Garrett leases; and, *second*, McFarlane was required to request, in writing, such assignments. Since such written notice was not given, Clevenger was under no duty to comply with the written request for the assignments. To hold that the giving of oral notice was sufficient to have obligated Clevenger to assign his interest in the leases would, by oral agreement, alter or change a material provision of the operating agreement, and

thus make a new agreement, resting partly in writing and partly in parol.

We have read the record in its entirety. There are no genuine issues of material fact presented by this appeal. Clevenger is entitled to judgment as a matter of law. We have considered all of defendants' points of error, and they are overruled.

The judgment of the trial court is AFFIRMED.