**EP OPERATING COMPANY, a Limited Partnership, and Enserch Exploration, Inc., Appellants,**

v.

**MJC ENERGY COMPANY, Appellee.**

No. 13–92–643–CV.

Court of Appeals of Texas, Corpus Christi.

June 23, 1994.

Rehearing Overruled July 28, 1994.

Randall C. Grasso, Dallas, Robert Q. Keith, Keith, Keith & Weber, Johnson City, for appellants.

Jacks C. Nickens, William H. Knull, III, Susan K. Pavlica, Mayer, Brown & Platt, Houston, for appellee.

Before KENNEDY, GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

This case involves the sufficiency of a series of letters to satisfy the statute of frauds

requirements for a contract for the sale of an interest in certain oil and gas leases.

Jones & Mitchell, Inc., formerly known as MJC Energy Company (MJC), originally made a May 1, 1989, written offer to purchase certain oil and gas working interests owned by EP Operating Company and Enserch Exploration, Inc. (Enserch). Following extensive negotiation and the exchange of correspondence, an Enserch representative on September 29, 1989, orally accepted the offer as modified by a provision for indemnification of Enserch with regard to certain pending litigation. However, Enserch later that day canceled the agreement when its management decided not to accept the deal.

MJC then sued Enserch for specific performance and damages for breach of contract. Enserch answered and pled the statute of frauds as an affirmative defense. After a jury trial which resulted in findings of a contract between MJC and Enserch, the trial court granted judgment for MJC ordering Enserch to convey the property in question and allowing MJC to recover damages for delay in performing and attorney's fees. Enserch brings a single point of error on appeal complaining that the agreement is unenforceable under the statute of frauds. MJC brings two cross-points complaining that the trial court erred in denying its motion for sanctions and in calculating its attorney's fees. We reverse and render judgment in favor of Enserch.

■ We first address Enserch's point that the written correspondence between the parties fails to satisfy the statute of frauds requirement for a memorandum of the contract. The correspondence in the present case consists of:

(1) An initial written purchase offer from MJC president James Mitchell to Enserch land manager Michael Altobelli dated July 26, 1989, which contained a space at the bottom for Enserch to sign.

(2) An August 16, 1989, letter from Gary Jungo, senior vice president of Enserch, acknowledging receipt of the offer but declining acceptance due to pending litigation concerning the property in question under the following terms:

"While amenable to a sale of its interests along the same general terms as discussed in your July 26, 1989 proposal, at this time, we feel that the pending litigation constitutes a temporary bar to the consummation of any such arrangement.

"At such time as this temporary bar is removed, we would be very interested in pursuing the negotiation of a sale on the same general terms as proposed."

(3) An August 22, 1989, fax from Enserch to MJC of the August 16, 1989, letter from Jungo, which also included a copy of an August 22, 1989, internal "transmittal memo" from the Enserch Land Administration Department Contracts Section to the Enserch Acquisition Department which stated in pertinent part, "Re: Acquisition/Sale Agreement, Dated: 07/26/89, Seller: EP Operating Company, Buyer: MJC Energy Co." and "Enclosed for your handling are 2 duplicate originals of the referenced agreement executed by EPOC. Please forward to the appropriate party/parties." The transmittal memo was signed by James Teringo, a lawyer in Enserch's contracts section.

(4) A September 27, 1989, fax to MJC from Altobelli concerning a proposed indemnification provision. MJC had sent a three-paragraph proposed modification of the original written offer with regard to indemnification in connection with the pending litigation. Enserch had made some corrections to the proposal substituting a certain term ("closing date" for "effective date") and faxed the corrected page back to MJC. The corrected page was unsigned, but the fax also included the following introductory note signed by Altobelli: "Jim [Mitchell]—Let me know what you think."

Based on this evidence and testimony at trial concerning the parties' negotiations, the jury found that Enserch agreed to sell the property in question to MJC pursuant to MJC's letter to Enserch of July 26, 1989, as modified by Enserch's proposed indemnification provision.

■ The statute of frauds requires a contract for the sale of real estate, or a memorandum of such agreement, to be (1) in writ-

ing, and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1987). Specifically, the sale of a working interest in an oil and gas lease is a real property interest which must be evidenced by such a written agreement or memorandum sufficient to comply with the statute of frauds. *See McFarlane v. Clevenger,* 665 S.W.2d 819, 825 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

■ The statute of frauds requires the written agreement or memorandum to be complete within itself in every material detail and to contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resort to oral testimony. *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978); *Crowder v. Tri–C Resources, Inc.,* 821 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1991, no writ).

■ Such a memorandum is required by the Statute of Frauds, not for the purpose of obtaining a contract in writing, but merely to furnish written evidence, signed by the party to be charged, of the obligation to be enforced against him. Therefore, a valid memorandum of the contract may consist of letters and telegrams signed by the party to be charged and addressed to his agent or the other party to the contract, or even to a third party not connected with the transaction. *Adams v. Abbott,* 151 Tex. 601, 254 S.W.2d 78, 80 (1952); *Joiner v. Elrod,* 716 S.W.2d 606, 609 (Tex.App.—Corpus Christi 1986, no writ); *American Bank of Waco v. Thompson,* 660 S.W.2d 831, 833 (Tex.App.—Waco 1983, writ ref'd n.r.e.); *Central Power and Light Co. v. Del Mar Conservation District,* 594 S.W.2d 782, 790 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.); *Taggart v. Crews,* 521 S.W.2d 703, 708 (Tex.Civ.App.—

San Antonio 1975, no writ); *Howell v. Bowden,* 368 S.W.2d 842, 846 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.).

In the present case, the written correspondence does not satisfy the statute of frauds. The three documents signed by representatives of Ensearch and upon which MJC relies for a writing are Jungo's letter, Teringo's memo, and Altobelli's fax note.

The Jungo letter unambiguously indicates that it is not an acceptance of the purchase offer, but at most an invitation to continue negotiations at the conclusion of the pending litigation. The Altobelli fax note is also clearly not an acceptance of the whole agreement but merely a suggested change in the language of one part of the proposal which was then under negotiation.

■ This leaves the Teringo memo, which admittedly suggests that Ensearch had executed an agreement with MJC concerning the property in question. However, the alleged agreement is clearly not evidenced by the Jungo letter, nor was any other such agreement enclosed with the Teringo memo. If a true written agreement exists as referenced by the Teringo memo, we can only guess what its terms may be, as it was not presented as an exhibit in the trial court.[1] Nor is the Teringo memo itself a writing sufficient to show that MJC's original offer was merely accepted by Ensearch without further modification or changes. Any such assumption, moreover, would be inconsistent with the jury finding that the contract included Ensearch's proposed indemnification provision.

■ A memorandum like the present Teringo memo which merely alludes to the existence of a separate contract but does not give sufficient details of the terms of that contract is insufficient to satisfy the statute of frauds.

---

1. The existence and terms of a written contract for the sale of an interest in real property may be proved by parol evidence when the written and signed memorandum is lost or destroyed such that the party seeking to prove the agreement is unable to produce the written memorandum in court. *Chakur v. Zena,* 233 S.W.2d 200, 202 (Tex.Civ.App.—San Antonio 1950, no writ); *see also Ikard v. Thompson,* 81 Tex. 285, 16 S.W. 1019 (1891). However, proof of the memorandum and its terms must be clear and convincing. *Chakur v. Zena,* 233 S.W.2d 200, 202 (Tex.Civ. App.—San Antonio 1950, no writ).

In the present case, even if we were to consider the Teringo memo merely as extrinsic evidence of a separate signed agreement which has been lost or destroyed, we are nevertheless faced with the same problem of insufficient proof of the terms of that lost agreement.

*See Wynnewood State Bank v. Brigham*, 434 S.W.2d 874, 878 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.); *see also Collins v. Allied Pharmacy Management, Inc.*, 871 S.W.2d 929, 933–34 (Tex.App.—Houston [14th Dist.] 1994, n.w.h.) (where memorandum indirectly implies, but does not specifically state, a critical term (three-year employment), the writing is insufficient to satisfy the statute of frauds).

We acknowledge some similarity between the present case and the *Joiner* case decided by this Court some years ago. In that case, the written offer contained a provision which required execution and delivery before a certain date or the offer was automatically revoked. The parties orally agreed to extend the execution date and the party sought to be charged sent both his signed acceptance of the offer and a telegram referencing the execution of the contract. Although the signed contract appeared invalid as having been executed beyond the period for acceptance, when considered in connection with the telegram suggesting a valid execution, this was held sufficient to satisfy the statute of frauds in showing an acceptance pursuant to the agreement to extend the date for execution and delivery. Thus, when a telegram references the written contract as having been executed and returned by the party sought to be charged, this telegram may be considered in conjunction with the written contract itself as a part of the required memorandum evidencing the agreement. *See Joiner*, 716 S.W.2d at 609.

However, unlike *Joiner*, in the present case we have no sure indication of the terms of the agreement that Enserch supposedly executed, nor is there any other memorandum in the present record which is both signed by Enserch and sufficient for us to infer what those terms might be.

■ Nevertheless, MJC contends that Enserch should be equitably estopped from raising the statute of frauds, because MJC relied on Enserch's misrepresentation in the Teringo memo that an acquisitions/sale agreement had been executed by Enserch, i.e., that a written contract had been signed which would have been sufficient to satisfy the statute of frauds. MJC further contends that

the evidence showed that it expended some $30,000 in reliance on this misrepresentation.

■ To establish an equitable estoppel sufficient to preclude the statute of frauds defense, MJC had the burden to raise and prove in the trial court: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge, or the means of knowledge of those facts; (5) who detrimentally relied upon the misrepresentation. *See Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991); *Collins*, 871 S.W.2d at 936–37.

We hold that the present representation that an agreement with unspecified terms had been executed by Enserch was insufficient to give rise to an equitable estoppel that would prevent Enserch from raising its statute of frauds defense.

■ MJC's reliance on equitable estoppel with regard to representations of an existing agreement is analogous to reliance on the theory of promissory estoppel with regard to representations that such an agreement will be signed in the future. The doctrine of promissory estoppel provides that when a party makes a promise and reasonably expects the promisee to rely on that promise by acting or refraining from acting in some manner, in order to avoid injustice, the promise is binding against the promisor. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 938 (Tex.1972); *Coastal Corp. v. Atlantic Richfield Co.*, 852 S.W.2d 714, 718 (Tex.App.—Corpus Christi 1993, no writ).

■ Specifically with regard to avoiding the statute of frauds, the promissory estoppel exception applies to cases where the promise was to sign a written agreement which itself complies with the statute of frauds. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex.1982); *"Moore" Burger*, 492 S.W.2d at 940 (on motion for rehearing); *Coastal Corp.*, 852 S.W.2d at 718; *Kenney v. Porter*, 604 S.W.2d 297, 303–04 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Accordingly, promissory estoppel may apply when a party

promises to sign an existing written contract that, but for lack of a signature, would satisfy the statute of frauds, or when a party promises to sign a proposed contract that has not yet been reduced to writing but on which the parties have reached agreement concerning all material terms. However, promissory estoppel does not apply to promises concerning an agreement the terms of which are still uncertain and subject to negotiation. Thus, a complete agreement on the terms and wording of the written contract is required to permit the application of promissory estoppel to a statute of frauds defense. *Coastal Corp.*, 852 S.W.2d at 718–19; see also *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 769 (5th Cir.1988) (applying Texas law).

The present case is comparable to these promissory estoppel cases in that MJC and Enserch were still negotiating the terms of the contract when the alleged misrepresentation was made such that there was no complete agreement on the terms of the contract at that time. Thus, even if a promise could be inferred from the Teringo memo concerning the signing of some uncertain document, lack of agreement on all the terms of the alleged contract would prevent the parties from relying on promissory estoppel to avoid the statute of frauds.

■ We find persuasive with regard to the doctrine of equitable estoppel the same general argument relied upon to deny promissory estoppel where the promise or representation of a signed writing is insufficient to establish the material terms of the contract to be signed. In fact, we find the representation that a written contract has been signed on the one hand, and the promise that one will be signed on the other, to be an insufficient distinction to allow recovery under the theory of equitable estoppel in the first instance, yet deny recovery under promissory estoppel in the second. We hold that, in both cases, the absence of agreement on critical terms of the written contract vitiates any reliance upon estoppel to save the con-

tract or allow an independent recovery. *See Crowder*, 821 S.W.2d at 397.

In conclusion, we sustain Enserch's point of error complaining that the written correspondence between the parties fails to satisfy the statute of frauds requirement for a memorandum of the contract, nor do the doctrines of promissory or equitable estoppel avoid the statute of frauds as a defense to the contract action.

■ MJC complains by its first crosspoint that the trial court erred in failing to sanction Enserch for discovery abuse that MJC learned of only after the trial had started and for which it filed a post-trial motion for sanctions.

Specifically, MJC argues that Enserch's conduct was so egregious as to warrant the striking of its statute of frauds defense. MJC points to Enserch's failure to produce large numbers of documents relevant to the contract cause of action and its destruction of the MJC contract file after it had been microfilmed. Some of these documents would suggest that Enserch had in fact agreed to the sale in question. MJC thus contends that Enserch hid damaging evidence until after trial and that the trial court had no discretion but to grant MJC's post-trial motion to sanction Enserch by striking its statute of frauds defense. In opposition to the motion for sanctions, Enserch pointed to testimony and evidence suggesting that its destruction of records and failure to produce certain documents was not intentional but the result of inadvertent mistakes, and argued that none of the documents about which MJC complains are sufficient to satisfy the statute of frauds. The trial court signed an order denying MJC's motion for sanctions.

■ We agree with MJC that the trial court may impose discovery sanctions posttrial for pretrial discovery abuse revealed for the first time during or after the trial. *See Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex.1993).[2] Nevertheless, merely because the trial court has the authority to

2. Generally, the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct. However, if pretrial discovery abuse is not re-

vealed until after the trial has begun, or even after trial, a party cannot be said to have waived a claim for sanctions. *Remington*, 850 S.W.2d at 170.

impose such sanctions does not mean that its refusal to impose sanctions is error.

A trial court's refusal to impose a particular discovery sanction can be set aside only upon a showing of a clear abuse of discretion. *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 442–43 (Tex.1984); *Tenngasco Gas Gathering Company v. Fischer,* 624 S.W.2d 301, 303 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). To establish a clear abuse of discretion, the complaining party must show that the trial court's action was arbitrary or unreasonable in light of all the circumstances of the particular case. The question is not whether the requested action constitutes an *appropriate* sanction, but whether imposition of that sanction is mandatory under the circumstances. *Smithson,* 665 S.W.2d at 443.

The legitimate purposes of discovery sanctions are threefold: 1) to secure compliance with discovery rules; 2) to deter other litigants from similar misconduct; and 3) to punish violators. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986), *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992). For a sanction to be just there must be a direct relationship between the offensive conduct and the sanction imposed, and the sanction imposed must not be excessive. *Remington,* 850 S.W.2d at 171; *Chrysler,* 841 S.W.2d at 849; *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991).

In the present case, we hold that the trial court acted within his discretion by denying MJC the requested sanction of striking Enserch's statute of frauds defense. The trial court could reasonably have concluded that there was no intentional wrongdoing by Enserch and that striking its pleadings would amount to an excessive punishment. Moreover, none of the undisclosed documents about which MJC complains constitutes a writing sufficient to satisfy the statute of frauds, nor was there any proof that such a writing had been secreted or destroyed by Enserch. Thus, the trial court could have reasonably concluded that there was no direct relationship between the undisclosed documents and the statute of frauds defense. We overrule MJC's first cross-point of error.

Having sustained Enserch's point of error and determined that MJC was not entitled to prevail on its claims at trial, we hold that MJC was likewise not entitled to attorney's fees and that its second cross-point concerning the amount of such fees should be overruled.

We REVERSE the judgment of the trial court and here RENDER judgment that MJC take nothing by its claims against Enserch.