In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00165-CV
______________________________


JOHN HAROLD OVERTON AND
DIANA JEAN OVERTON, Appellants
 
V.
 
JUANITA BENGEL, INDEPENDENT EXECUTRIX
OF THE ESTATE OF 
DELBERT MESSNER, DECEASED, AND
CHEROKEE WATER COMPANY, Appellees


                                              

On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. 2002-366


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          This appeal is from a judgment that decided whether an estate had the right to sell
property of the decedent, Delbert Messner, to Cherokee Water Company, or if it had to
honor an option to purchase belonging to John Harold Overton. Juanita Bengel, as
independent executor of Delbert's estate, filed suit against Overton and his wife, Diana
Jean, and Cherokee asking the court to declare the rights of the parties under the
competing agreements. The Overtons filed a cross-claim against Cherokee claiming that,
by entering an agreement to purchase the property from the estate, Cherokee had
tortiously interfered with their pre-existing contract. After a bench trial, the court found that
the estate's contract to sell the property to Cherokee was enforceable and that the
Overtons' contract was not. The court also rendered judgment in favor of Cherokee on the
Overtons' tortious interference claim. 
          In four issues, the Overtons challenge the trial court's findings (1) that the "First
Right of Refusal" did not grant the Overtons a preferential right to purchase the property
for a fixed price; (2) that the termination of the "First Right of Refusal" terminated the
Overtons' rights; (3) that the Overtons did not timely exercise the option to purchase the
property the subject of the suit; and (4) that there was insufficient evidence to support a
tortious interference with a contract claim against Cherokee. 
I. Standard of Review
          Findings of fact entered in a case tried to the court are of the same force and dignity
as a jury's answers to jury questions. Anderson v. City of Seven Points, 806 S.W.2d 791,
794 (Tex. 1991). We review its findings for legal and factual sufficiency of the evidence
to support them by the same standards that are applied in reviewing the legal or factual
sufficiency of the evidence to support a jury's answer to a jury question. Ortiz v. Jones, 917
S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).
          In determining a no-evidence issue, we consider only the evidence and inferences
that tend to support the finding and disregard all evidence and inferences to the contrary. 
Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v. Cazarez,
937 S.W.2d 444, 450 (Tex. 1996). Anything more than a scintilla of evidence is legally
sufficient to support the finding. Cazarez, 937 S.W.2d at 450. When considering a factual
sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of
the evidence, not just that evidence which supports the verdict. Maritime Overseas Corp.
v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998). A court of appeals can set aside the verdict only
if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly
wrong and unjust. Id.; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
II. Background
          The record shows that Delbert, on behalf of the Messner Family Trust, which held
title to the property, and John Overton signed a document entitled "First Right of Refusal." 
This document gave John Overton thirty days after receiving written notice of the death of
the survivor of Delbert or Barbara Messner to purchase two tracts of land at a set price. 
Less than a year later, Delbert signed a document entitled "Termination of First Right of
Refusal," but failed to give a copy of this termination to the Overtons. Delbert and Barbara
died, and Bengel, the executor of the estate of the last to die, signed a contract agreeing
to sell the land to Cherokee for more money ($300,000.00 versus $250,000.00). John
Overton then tried to enforce the "First Right of Refusal" agreement, but Cherokee refused
to release the estate from its contract. 
          After a bench trial, the trial court found, inter alia: (1) that the document entitled
"First Right of Refusal" did not grant John Overton a preferential right to purchase the
property; (2) that Delbert terminated the "First Right of Refusal," which terminated John
Overton's rights, if any, under that document; (3) that John Overton received a letter from
Carolyn Matter in March 2002, informing him of Delbert's death; and (4) that John Overton
failed to prove any cause of action against Cherokee for tortious interference with John
Overton's contract to purchase the property. 
III. Right of First Refusal or Option to Purchase
          We first look at the type of contract at issue. The document is titled a "First Right
of Refusal." A "right of first refusal" is a contract granting a party the first right to purchase
the subject property for the same amount offered by a bona fide purchaser. Tenneco, Inc.
v. Enter. Prods. Co., 925 S.W.2d 640, 644 (Tex. 1996). The trial court found the document
at issue to be a contract granting John Overton an option to purchase the property. The
document purports to grant John Overton a right to purchase property for a fixed price
within a set time period of thirty days. This is the very nature of an option contract,


 and
the court correctly so defined this document.
IV. Enforceability
          The next question is whether the option to purchase was enforceable. The court
concluded it was not. We agree. 
          1. Statute of Frauds
          The option contract stated that a sales contract was attached. The evidence
showed that none was. The absence of this attachment puts the option contract at odds
with the statute of frauds. See Tex. Bus. & Com. Code Ann. § 26.01 (Vernon 2002). This
statute requires a contract for the sale of real estate, or a memorandum of such
agreement, to be (1) in writing, and (2) signed by the person to be charged with the
promise or agreement or by someone lawfully authorized to sign for such person. EP
Operating Co. v. MJC Energy Co., 883 S.W.2d 263, 266–67 (Tex. App.—Corpus Christi
1994, writ denied).
          We first point out that the sales contract the Overtons cite as the appropriate one
not only was not attached to the option agreement, but was never signed by either the
Messners individually or in their status as holders of the revocable trust. Further, with
respect to the agreements defined within a memorandum, such memorandum must be
complete within itself in every material detail, and contain all of the essential elements of
the agreements, so that the agreements can be ascertained from the writings without
resorting to oral testimony. Cohen v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978). This
requirement may be satisfied with two documents if the second document refers to the first. 
Crowder v. Tri-C Res., Inc., 821 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1991,
no writ). However, the reference to the first document contained in the second document
must give sufficient details of the terms of the agreement embraced in the first document
to satisfy the statute of frauds. See EP Operating Co., 883 S.W.2d at 267. A
memorandum like the present option contract, which merely alludes to the existence of a
separate contract but does not give sufficient details of the terms of that contract, is
insufficient to satisfy the statute of frauds. Id. 
          2. Irreconcilable Conflicts
          When the provisions of a contract appear to conflict, they should be harmonized if
possible to reflect the intentions of the parties. Harris v. Rowe, 593 S.W.2d 303 (Tex.
1979). Generally, the parties to a contract intend every clause to have some effect and the
court will not strike down any portion of the contract unless there is an irreconcilable
conflict. Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex. 1983). 
          The sales contract on which the Overtons rely is inconsistent with the option to
purchase because it provided a life estate in the property for the Messners, while the option
only became operative following the death of the survivor. Also, the unsigned sales
contract specifies a closing date seventy-five days before the date the option contract was
executed. Thus, the sale could not have been closed and completed in the manner set out
by the contract.
          In addition, the "First Right of Refusal" document internally refers to a special
warranty deed in which the Messners transferred ownership of the property to the trust, as
providing a description of the property covered by the option contract. The Overtons claim
that lot NQ-10 is included within the option, but lot NQ-10 is not covered by the special
warranty deed. 
          The trial court correctly concluded that the option was unenforceable, and the
Overtons' first point of error is overruled.
V. Termination of the "First Right of Refusal"
          The Overtons also argue the trial court erred in finding that a document entitled
"Termination of First Right of Refusal" signed by Delbert terminated the Overtons' rights. 
The uncontroverted evidence was that consideration for the contract changed hands, thus
binding both parties to the transaction. Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401,
408–09 (Tex. 1997). Once consideration passes, an option becomes irrevocable. Riley
v. Campeau Homes (Texas), Inc., 808 S.W.2d 184, 188 (Tex. App.—Houston [14th Dist.]
1991, writ dism'd by agr.). However, because we have held the option was unenforceable,
we overrule this issue as moot.
VI. Timeliness 
          Even if the agreement was enforceable as an option to purchase between these
parties, the option had to be exercised within thirty days after John Overton was informed
in writing of the death of the survivor. He received a letter in late March 2002, asking him
to waive his "First Right of Refusal." John Overton admitted he found out about Delbert's
death because of that letter. The trial court found that the letter served to inform John
Overton that Delbert had died. Counsel argues that the court should not have considered
that early notification, but only a letter from the estate for which John Overton signed
August 2, 2002. John Overton, by and through his counsel, attempted to exercise the
option August 19. 
          John Overton's own testimony is inconsistent. He first testified that he received a
letter from a real estate agent asking him to waive the right of first refusal and that he went
to the newspaper and found an obituary notice of Delbert's death. He was then asked if
he recalled anything about that letter besides the fact it told him "that Mr. Messiner [sic]
was dead and asking you to waive first right of refusal." He answered, "No." There is
therefore evidence John Overton was informed by letter in March 2002 about the death of
the surviving Messner. To contradict this testimony, the Overtons point to John Overton's
later testimony in which he stated he only received one notification of Delbert's death—the
certified letter sent in July from the attorney for the estate, and denying he had received
notice in March. 
          The trial court found that adequate written notification was provided in March, and
thus the attempt to exercise the option was untimely. The contrary evidence is not so
overwhelming as to allow us to take the case from the fact-finder and render a different
verdict. The finding of fact is supported by the evidence. The contention of error is
overruled.
VII. Tortious Interference 
          Because our resolution of this appeal affirms the conclusion that the "First Right of
Refusal" was not enforceable, we necessarily conclude the trial court correctly determined
Cherokee did not tortiously interfere with any existing contractual relationship. 
VIII. Conclusion
          We affirm the judgment.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      June 9, 2004
Date Decided:         July 2, 2004